**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **DAVID ANTONIO CAMPOVERDE,** | ) | **Case No. 10-41685-7 JMK** |
| | ) | |
| **Debtor.** | ) | |

**TRUSTEE'S MOTION TO COMPEL**

COMES NOW, Defendant, Patricia E. Hamilton, Trustee (hereinafter, the "Trustee"), by and through her counsel, Patricia E. Hamilton, and, pursuant to D. Kan. LBR 7026.1(g) and (l), moves the Court for an Order compelling CitiMortgage, Inc. to comply with this Court's orders announced at the docket on February 9, 2011, as more fully set forth below:

1. The Debtor, David Antonio Campoverde, filed a voluntary petition under the United State Bankruptcy Code on September 17, 2010 (the "Filing Date").

2. On November 12, 2010, CitiMortgage, Inc. filed its Motion for Relief from Stay ("Motion for Relief") in regard to a real estate mortgage on real estate located at 2001 Mt. Vernon Terrace, Emporia, Kansas, 66801, in Lyon County, Kansas, which is not claimed as exempt and having a value of $145,000 in the Debtor's schedules (the "Real Property"). Attached to the Motion for Relief is a copy of a promissory note (the "Note") in favor of CitiMortgage, Inc. ("CitiMortgage"). The Note attached to the Motion for Relief does not bear an endorsement. Also attached to the Motion for Relief is a real estate mortgage (the "Mortgage) in favor of Mortgage Electronic Registration Systems ("MERS") as nominee of CitiMortgage, Inc. in regard to the Real Property.

3. CitiMortgage attached the Note and Mortgage to the Motion and states it is entitled to enforce the Note and Mortgage as allowed by law. However, the Motion fails to

specify the actual legal and factual basis for the requested relief. Attached to the Motion is an Assignment of Mortgage dated June 16, 2010, and executed by D. M. Wileman on June 18, 2010, purporting to assign the Mortgage from MERS as nominee for CitiMortgage, Inc. G4318 Miller Road, Flint, MI 48507 to CitiMortgage, Inc., 4050 Regent Blvd., Mail Stop N2A-222, Irving, TX 75063. No evidence of Ms. Wileman's authority to execute the assignment is provided and there is no reference to any underlying agreements related to the purported assignment.

4. On December 3, 2010, the Trustee filed her Objection to the Motion for Relief, citing the fact CitiMortgage failed to provide any evidence of the chain of title of the Note or Mortgage to demonstrate its legal, equitable or factual basis for seeking the requested relief.

5. On February 9, 2011, the Motion for Relief and the Trustee's Objection came on for hearing. The Trustee submitted to the Court a copy of a Fannie Mae website indicating that Fannie Mae claimed to have purchased the Note and Mortgage related to the Real Property. The Trustee also provided the Court with a "FAQ" section linked to the Fannie Mae website which explained that if Fannie Mae was the owner of the loan, that the original lender (in this case, CitiMortgage), was now only the servicer. After hearing arguments of counsel, the Court ordered that within 30 days of the hearing, counsel for CitiMortgage was to produce the MERS milestone report, a certification that the copy of the Note attached to the Motion for Relief is a true and correct copy of the Note as it exists today, and something that will trace the ownership of the Note "so that we can see where it ends up." (The Trustee has obtained a copy of the recording of the hearing on February 9 and has utilized the recording to prepare this Motion to Compel.) Specifically, the Trustee and the Court discussed that these last two items were in addition to the MERS milestone report. Additionally, counsel was directed to address the issue

regarding the alleged notarization of the Debtor's signature in New Jersey despite the fact that the Mortgage was filed on record in Lyon County, Kansas, on the same date. Counsel for CitiMortgage, in response to the Court's inquiry as how that would be done, stated that his client had an incentive to provide a statement prior to the next hearing that would set out the circumstances under which the Mortgage was allegedly notarized in New Jersey and recorded in Lyon County on the same date. Counsel suggested that might be in the form of a tracking statement from a delivery service. The Court continued the matter to a status conference on April 13, 2011.

6.    On February 9, 2011, the Trustee confirmed with counsel for CitiMortgage that she had never been provided with the MERS milestone report. Counsel responded that he would send the Trustee the report that afternoon, as well as the other items discussed at the docket.

7.    On February 25, 2011, the Trustee contacted counsel for CitiMortgage and he indicated that his office did not have the MERS milestone report but that they were working on providing the "documents you requested regarding the standing issues raised in your MFR response."

8.    On Monday, March 14, 2011, having received no response since February 25 and no documents from CitiMortgage, the Trustee made written demand on counsel for CitiMortgage to comply with the Court's orders as announced on February 9, 2011.

9.    On Wednesday, March 16, 2011, counsel for CitiMortgage sent the Trustee an email, a copy of which is attached hereto as **Exhibit 1**. The March 16 message attached a copy of the MERS milestone report. The email indicates that the Trustee may travel to Leawood to inspect the original Note. No copy of the original note was provided nor was any certification as to the fact that copy of the Note attached to the Motion for Relief was, in fact, a true and correct

copy. Although the Trustee has requested she be sent a copy of the Note which is apparently now in counsel's possession, it has not been provided.

10. The March 16 message also fails to address the standing issues but does state that counsel "cannot disclose the servicing agreement." No basis for counsel's inability to provide the servicing agreement is offered.

11. Upon information and belief, the only role CitiMortgage may currently have in regard to this Note and Mortgage is that it is acting as the servicer. Its failure to provide perhaps the only agreement upon which its rights in regard to the Note and Mortgage are determined, is a violation of the duties imposed on a claimant seeking stay relief under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and this Court's Local Rules

12. The Court ordered CitiMortgage to provide something which would trace the ownership of the Note so that "we can see where it ends up." Despite this directive, no other documents or information has been provided. Counsel suggested that it would be necessary to obtain the original Note as a part of this investigation and that the Note was in storage. No information or documents have been provided to the Trustee or the Court which provides ANY further information than what was available at the hearing on February 9, 2011, in regard to the chain of ownership of the Note. Conversely, the only information supplied by CitiMortgage seems to confirm the Trustee's allegation at the February 9 docket (based on public information available on the Fannie Mae website and the MERS website) that CitiMortgage is only a servicer and not a real party in interest. There continues to be nothing in the record to disclose who the real party in interest is, to whom the money is owed in this case, and how that yet-to-be-disclosed party obtained its rights in the loan. Undoubtedly, there are several relevant documents

and very likely a complete custodial record which may be relevant to the issue of who holds the beneficial rights in this loan.

13. In regard to the notarization irregularities, counsel for CitiMortgage in his March 16 message he indicates his client has no information indicating the Mortgage was in fact signed in New Jersey and then delivered to Kansas that same date, but suggests that is a legal issue which may be briefed by the parties. No other information, statement or certification is provided. Again, somewhere there exist records which would indicate how the Mortgage made its way from New Jersey to Lyon County and CitiMortgage's response is wholly inadequate.

14. The March 16 message and attachment are woefully insufficient to comply with the Court's February 9, 2011 orders. So much so as to support a finding that the response was made in bad faith, and in contradiction to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and this Court's Local Rules.

15. Upon information and belief, the MERS milestone report purports only to track transfers in the beneficial rights of the security interest held under a mortgage or deed of trust. Despite the fact that CitiMortgage should have all of this information readily available to it and despite the fact that CitiMortgage has had its Motion for Relief on file for over four months, and despite the fact that the Court ordered this information produced, the Trustee is forced to investigate who the beneficial owner of the Note is and how the yet-to-be-disclosed owner obtained its interest in the Note. Additionally, the Trustee obtained a CD of the February 9 hearing (at a cost of $26, which is about half of the Trustee's compensation in a no-asset case), to clarify CitiMortgage's obligations in regard to the production of additional information, documentation and clarification in regard to the Motion for Relief.

16. The Trustee, utilizing public information available on MERS's website, offers the following information in support of her Motion to Compel.

17. The MERS website makes available to the public a copy of its current MERS Procedures Manual (current Release 19.0, released June 14, 2010). Also, available to the public are MERS's training bulletins. In one of its current Training Department Training Bulletin for "Transfers of Beneficial Rights – Option 1" it states:

> Overview:
> A beneficial rights transfer is the transfer of the security interest held under a mortgage or deed of trust for a loan or group of loans to a new owner or Investor.

(MERS Training Bulletin, Transfers of Beneficial Rights – Option 1, page 1, attached as **Exhibit 2; at http://www.mersinc.org/MersProducts/manuals.aspx?mpid=1 "Transfer of Beneficial Rights, Option 1, Quick Reference Guide, 18.0, 06/07/09.**).)

18. The Training Bulletin identifies nine different types of reports available to members of MERS generated and available in regard to transfers of beneficial rights. Counsel for CitiMortgage has not provided a single one of these reports to the Trustee.

19. Additionally, the MERS Procedures Manual has a specific section entitled "Transfer of Beneficial Rights." The introduction to this section states:

> Overview
> Although MERS tracks changes in ownership of the beneficial rights of the loan registered on the MERS System, MERS cannot transfer the beneficial rights of the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee.

(MERS Procedures Manual – Release 19.0 -6/14/10 at p. 63, attached as **Exhibit 3; at http://www.mersinc.org/MersProducts/manuals.aspx?mpid=1 "Procedures Manual, Option 1, Quick Reference Guide, 18.0, 06/14/10.**).

20. Upon information and belief, the beneficial owner of the Note has yet to be revealed in this case. The MERS website indicates that there was a transfer of the beneficial rights in the security interest under the Mortgage to Fannie Mae. The website for Fannie Mae

does indicate that it owns the loan, but it also explains that the loan has likely been securitized, a process that suggests the ownership of the Note may have been sold and negotiated to a trust or other entity so that securities could be sold to investors. So while the Note may be endorsed in blank, if the Court and Trustee have been denied any information regarding the various sales of the Note and the related agreements (servicing, custodial and sales agreements), it is impossible to know who holds what rights in the Note. Physical possession of a promissory note endorsed in blank is not the end of the inquiry. If it was, then Millsap and Singer or perhaps counsel individually would be the holder because the Note is now in the law firm's possession. However, the law firm and its attorneys and staff are well aware that they hold the Note as the agent for the owner an, therefore, may not claim the status of a holder. Without having any idea of the nature of the agreement between the servicer, the custodian and the owner of the Note, it is not possible to know what rights any party has to obtain relief from stay or proceed with a foreclosure. As the Court indicated, the Trustee and the Court are entitled to know what capacity a motion for relief or proof of claim is filed. This is not some extraordinary obligation applied to mortgage loan creditors. Instead, it is a requirement of any party who asserts a claim in a bankruptcy case. And, in this case, the movant seeks to obtain rights in regard to a valuable piece of estate property to the detriment of all the other creditors in the case.

21. Upon information and belief, CitiMortgage appears in this case as a servicer and, perhaps, as a custodian, but not as the real party interest. The basic questions directed at counsel at the February 9 hearing remain unanswered: what is CitiMortgage's capacity in this case and what is the basis for that asserted capacity. Upon information and belief, CitiMortgage's rights are determined entirely by agreements which have not even been revealed and those agreements are with the owner who has never been identified by CitiMortgage. As a result, the Court and the

Trustee of this estate are left to piece together bits of information, ask multiple questions and wait for months to receive inadequate and, quite frankly, illusive responses. This scenario, (i.e having to scratch out every bit of information from a movant who refuses to voluntarily cooperate and supply basic information as required by the Code and Rules) was certainly not contemplated by the drafters of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure. In fact, just the opposite is true. A Chapter 7 trustee generally has extremely limited resources with which to investigate irregularities in regard to a movant or alleged creditor's proof of claim, so the Code and Rules place a reasonable and rational burden on the proponent and require that the documents supporting a party's claim in the case be included as an attachment or at least summaries. If the Trustee had not located the Fannie Mae website on February 9 and presented those findings to the Court at that time, CitiMortgage may have wrongfully obtained relief from the stay in regard to this case. The Trustee, for the benefit and protection of the estate, is entitled to receive the documents which support a party's right to the relief to which it seeks. CitiMortgage's failure to initially provide that information and documents which demonstrate its connection to the Note and Mortgage and its alleged right to relief from stay, as well as its continued failure to provide the information in response to the Court's direct orders constitutes bad faith and may warrant the award of fees and expenses to the Trustee. The Trustee reserves the right to make such request.

WHEREFORE, the Trustee requests that the Court compel CitiMortgage to produce the documents and information it was ordered to produce during the February 9 hearing, to provide an explanation as to why it failed to abide by the Court's orders and its obligations under the Bankruptcy Code, Bankruptcy Rules and this Court's Local Rules in connection with its Motion for Relief and its response to the February 9 orders, and for an order requiring CitiMortgage to

provide all additional documents which do exist and which have not yet been provided to support its Motion for Relief, and further find that the Trustee is entitled to have an opportunity to review the documents, affidavits and business records upon which the Plaintiff relies to demonstrate the nature and extent of its rights, title, and interest in the Note and Mortgage, and grant such other and further relief as is just and equitable.

Respectfully submitted,

s/ Patricia E. Hamilton
Patricia E. Hamilton, KS Bar No. 13263
515 S. Kansas Ave, Suite 200
Topeka, KS 66603
785-408-8000 (phone), 408-8003 (fax)
phamilton@stevensbrand.com
Counsel for Trustee/Chapter 7 Trustee

**CERTIFICATE OF SERVICE**

The undersigned does herby certify that a true and correct copy of the foregoing was filed electronically on this 22nd day of March, 2011, with the United Stats Bankruptcy Court for the District of Kansas, and shall be served on parties in interest via e-mail by the court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Kansas and those parties listed below:

NONE

s/ Patricia E. Hamilton
Patricia E. Hamilton

# Patricia E. Hamilton

**From:** Michael Wambolt [MWambolt@msfirm.com]
**Sent:** Wednesday, March 16, 2011 3:08 PM
**To:** Patricia E. Hamilton
**Cc:** Cynthia Woolverton
**Subject:** RE: 10-41685 In re Campoverde

**Attachments:** MERS Milestone 10-41685_110311_0741.pdf

MERS Milestone
)-41685_110311.

Patricia - attached for your review is a copy of the MERs Milestone report which confirms that our client has standing to enforce the Note and Mortgage for this file. Though we cannot disclose the servicing agreement, we can make the original Note available for your inspection/copying at our office in Leawood, Kansas.

Regarding the issue with the notary block, we do not have information indicating the notary signed the mortgage in New Jersey and then express shipped same for recording in Kansas. That said, the mortgage was accepted by the recorder's office and was in fact recorded. It seems to us that this is a legal issue and that we can resolve same by briefing the issue of whether a defect in a notary block serves to render a mortgage void or voidable.

Let me know how you would like to proceed with this case. We believe that we have complied with the Court's March 9 Order and do not see what a motion to compel would accomplish at this time.

Regards,

Michael J. Wambolt
Associate Attorney

Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005
Telephone (636) 537-0110
Facsimile (636) 537-0067

This e-mail message and all replies are not encrypted. Any information provided in this e-mail or any response may not be secure or confidential. This message and any attachments are intended for the personal and confidential use of the recipients designated above. This communication may constitute attorney-client communication and as such may be legally privileged. If you are not the intended recipient of this communication your review, disclosure, or use of the information contained herein is prohibited. The unintended delivery to you of this message should not be construed as the waiver of any attorney-client privilege.

-----Original Message-----
From: Patricia E. Hamilton [mailto:PHamilton@stevensbrand.com]
Sent: Monday, March 14, 2011 5:44 PM
To: Michael Wambolt
Cc: Jill D. Patrick; Genie Gnagi; Kristin Ballobin
Subject: 10-41685 In re Campoverde
Importance: High

EXHIBIT
1

The Court ordered that your client provide the documents related to the motion for relief from stay within 30 days of the hearing on Wednesday, March 9. Your message from February

25, 2011, is the last communication I have received from your office. I also checked the docket and do not find any type of response filed with the Court. Additionally, I would note that I've been promised supporting documents for some time now and have not received anything except your emails and the January 27 letter Ms. Wolverton sent to Judge Karlin and the exchange that followed on February 4.

It is my intent to seek an order compelling your client to provide these documents unless there is some basis for an extension of time to comply with the Court's order. Thanks for your prompt attention to this matter.
Please send me an update by Thursday, March 17. Also, please be advised I am not agreeing to an extension of time to provide the documents, but I do not intend to file my motion to compel until Friday. Thanks, Patricia Hamilton Trustee

Patricia E. Hamilton
STEVENS & BRAND, L.L.P.
Attorneys at Law
515 S. Kansas Ave., Suite 200
Topeka, Kansas 66603
Phone: (785) 408-8000
Fax: (785) 408-8003
-----Original Message-----
From: Michael Wambolt [mailto:MWambolt@msfirm.com]
Sent: Friday, February 25, 2011 12:37 PM
To: Patricia E. Hamilton
Subject: RE: 10-41685 In re Campoverde

We thought we had the MERs Milestone report but the document merely listed the investors for the loan and not the servicing information. I was also led to believe you received the report via e-mail but it is apparent that you did not. We are working on getting all of the documents you requested regarding the standing issues raised in your MFR response.

Let me know if you need anything else regarding this file.

Thanks.

Michael J. Wambolt
Associate Attorney

Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005
Telephone (636) 537-0110
Facsimile (636) 537-0067

This e-mail message and all replies are not encrypted. Any information provided in this e-mail or any response may not be secure or confidential. This message and any attachments are intended for the personal and confidential use of the recipients designated above. This communication may constitute attorney-client communication and as such may be legally privileged. If you are not the intended recipient of this communication your review, disclosure, or use of the information contained herein is prohibited. The unintended delivery to you of this message should not be construed as the waiver of any attorney-client privilege.

-----Original Message-----
From: Patricia E. Hamilton [mailto:PHamilton@stevensbrand.com]
Sent: Friday, February 25, 2011 11:11 AM
To: Michael Wambolt
Cc: Kristin Ballobin; Genie Gnagi
Subject: RE: 10-41685 In re Campoverde

You indicated I would be sending these items a couple weeks ago. I do not have a record of having received anything from you since your email attached below. Also, nothing has been received in the mail. Please let me know the status. Thanks, Patricia Patricia E. Hamilton STEVENS & BRAND, L.L.P.

Attorneys at Law
515 S. Kansas Ave., Suite 200
Topeka, Kansas 66603
Phone: (785) 408-8000
Fax: (785) 408-8003
www.stevensbrand.com

-----Original Message-----
From: Michael Wambolt [mailto:MWambolt@msfirm.com]
Sent: Wednesday, February 09, 2011 1:55 PM
To: Patricia E. Hamilton
Subject: 10-41685 In re Campoverde

Patricia - no problem, we will send the MERs' report to you this afternoon along with the other information we discussed at this morning's hearing.

Thanks.

Michael J. Wambolt
Associate Attorney

Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005
Telephone (636) 537-0110
Facsimile (636) 537-0067

This e-mail message and all replies are not encrypted. Any information provided in this e-mail or any response may not be secure or confidential. This message and any attachments are intended for the personal and confidential use of the recipients designated above. This communication may constitute attorney-client communication and as such may be legally privileged. If you are not the intended recipient of this communication your review, disclosure, or use of the information contained herein is prohibited. The unintended delivery to you of this message should not be construed as the waiver of any attorney-client privilege.

# MILESTONES for 1000115-2003414023-8

| Description | Date | Initiating Organization / User | Milestone Information |
| --- | --- | --- | --- |
| Foreclosure Status Update | 06/15/2010 | 1000115 CitiMortgage, Inc.<br>Batch | MIN Status: Active (Registered) Foreclosure Status: Foreclosure Pending (option 1), assigned to servicer<br>Quality Review: N |
| Transfer Beneficial Rights - Option 1 | 03/03/2006 | 1000130 Fannie Mae<br>Batch User ID | MIN Status: Active (Registered)<br>New Investor: 1000130 Fannie Mae<br>Old Investor: 1000115 CitiMortgage, Inc.<br>Batch Number: 3196349<br>Transfer Date: 03/02/2006 |
| Registration | 02/17/2006 | 1000115 CitiMortgage, Inc.<br>Batch | MIN Status: Active (Registered)<br>Servicer: 1000115 CitiMortgage, Inc. |



## Transfers of Beneficial Rights – Option 1

**Overview:**

A beneficial rights transfer is the transfer of the security interest held under a mortgage or deed of trust for a loan or group of loans to a new owner or Investor. MERS® OnLine users have two options for transferring beneficial rights to another member: Option 1 and Option 2. The determination of whether Option 1 or Option 2 is used is based on the membership profile of the purchasing investor. Option 1 Investors include, Fannie Mae, Freddie Mac and Ginnie Mae, as well as RFC and the FHLB. The buyer initiates an Option 1 transfer as a result of the transmission of sales data through each of the investors' unique methods (Mornet, Midanet, Ginninet, etc.).

- An Option 1 transaction can be done in either batch mode or online; however, most are processed through batch. In a batch Option 1 transaction, the investor transfers beneficial rights on a system other than MERS. The batch transfer is on MERS using an Electronic Data Interchange (EDI) or MERS proprietary flat file format process. Loans that are rejected from either batch process are generally corrected and recorded on MERS using the Option 1 online process. Using either of the Option 1 processes, the Option 1 investor replaces any Option 2 investor on the loan. The Investor Removed by Option 1 TOB Report notifies the investor that was removed during the Option 1 process of their removal via MERS Report.
- No confirmations are required for Option 1 transfers and Interim funder interests are released automatically in an Option 1 beneficial rights transfer.
- A MIN can be in an Option 1 and Option 2 beneficial rights transfer batch at the same time. When the Option 1 beneficial rights transfer is recorded, the duplicate MIN is deleted from the Option 2 beneficial rights transfer. The MINs deleted from the Option 2 beneficial rights transfer appear on a report. Non-duplicate MINs remain in the Option 2 transfer batch.
- MINs can exist simultaneously in an Option 1 beneficial rights transfer batch and a transfer of servicing batch. However, MINs cannot exist simultaneously in both an Option 2 beneficial rights transfer batch and a transfer of seasoned servicing rights batch or a Flow TOS/TOB batch.
- A MIN can exist simultaneously in both an Option 2 beneficial rights transfer batch and a transfer of flow servicing rights batch only if the new investor Org ID of the Option 2 transfer of beneficial rights batch matches the new servicer Org ID of the flow transfer of servicing rights batch.

**Reports:**

- Pending Transfer of Beneficial Rights Report (BA) Lists all transfer of beneficial rights batches with a transfer date in the future. Confirmations performed by the new and current investor are reported here up to the transfer date.
- Physical Transfer of Beneficial Rights Report (BB) Lists all physical transfer of beneficial rights to an investor when the transfer date has occurred. This report also lists all loans that did not process on the transfer date due to rejection by the old investor, new investor, or system rejection.
- Overdue Transfer of Beneficial Rights Report (BC) Lists all MINs in beneficial rights transfer batches that have not been confirmed or rejected by all required parties before the transfer date, and the transfer batches are considered to be in overdue status.
- Transfer of Beneficial Rights Rejects Report (BF) Lists all transfer of beneficial rights transactions that were rejected in the previous processing cycle because of operator or system error. This report includes a sale ID field in the report section header with the MERS transfer batch number. One MIN from each rejected batch will also be displayed.
- Canceled Transfer of Beneficial Rights Report (BG) Lists all transfer of beneficial rights batches that have been canceled by the initiator of the batch. Only the initiator of a batch can cancel a batch. A batch can be canceled any time prior to the transfer effective date.
- MINs Deleted from Transfer of Beneficial Rights Report (BH) Lists all MINs transferred as a result of Option 1 batch processing where MINs that also existed in an Option 2 batch were deleted from the Option 2 batch.
- Investor Removed by Option 1 TOB Report (BI) Lists MINs on which the investor was removed in the Option 1 transfer process.
- Summary of Transfer of Beneficial Rights Rejects Report (BJ) The report lists, by servicer Org ID, the number of rejected MINs for each servicer Org ID.
- Org ID to Agency ID Cross-Reference Report (BK) This report lists the Org ID and Member Name for all MERS members that have Agency IDs populated for the Agency investor. The report is used by GNMA and other Agency investors to verify accurate Agency IDs have been loaded to MERS as well as to identify any missing Agency IDs for members selling beneficial rights to the Agencies.

EXHIBIT 2

**MERS® OnLine Guides:**

To follow the screen prints, start from the **Main Menu**, select **TOB Menu** and then **Create TOB Option 1**.

**Create TOB Option 1 Batch**

https://www.mersonlineuat.org - MERS OnLine - Microsoft Internet Explorer

File Edit View Favorites Tools Help

MERS OnLine

TOB Menu
View List of Batches
Create TOB Option 1
Create TOB Option 2
Confirm Batch
Cancel Batch
Modify Batch
Back to Main Menu
TOB Help
Logoff

Create TOB Option 1 Batch

Transfer Type: TOB option 1
Transfer Date*
Initiated by:
Current Investor:
New Investor* 1005500

Delete Current Custodian:

Submit

Enter the date you want beneficial rights to transfer (not later than 180 days after transfer creation date)

Enter the New Document Custodian Org ID (if applicable)

Select to remove Custodian Org ID from MIN without inserting a new Custodian

Click on Submit

Done

**Transfer of Beneficial Rights (Option 1) MIN List**

MERS
OnLine
Transfer Beneficial Rights MIN List
Enter the MIN(s), Pool Number(s), if applicable, Investor Loan Number(s), if applicable, and Agency ID(s), if applicable
If (an) additional MIN(s) need(s) to be added to the batch, click More button at the bottom of the page, repeating as necessary
Click Submit when the list of MINs is complete

# Transfer of Beneficial Rights

## Overview

The Transfer of Beneficial Rights (TOB) transaction is used to track the transfer of beneficial rights from one investor to another.

There are two types of investors in the MERS® System:

- *Member Investors (Investors who are MERS Members)*
  Member Investors sign a MERS Application, pay MERS membership fees, and have full access to the MERS® System. *As a Member Investor, you have the choice of processing confirmations of Transfer of Beneficial Rights transactions and all other transactions manually or automatically.*

- *Non-Member Investors*
  Non-Member Investors do not sign a MERS Application or pay MERS fees and have no ability to access the MERS® System, confirm MERS transactions or retrieve MERS reports. A MERS Member must represent them on the MERS® System.

There are two types of TOB transactions on the MERS® System, either of which may be initiated online or via batch.

- *Option 1*
  Used only by Option 1 (or Agency) investors such as Freddie Mac, Ginnie Mae, and Fannie Mae, to claim investor rights on loans transmitted via MIDANET, GinnieNet, MORNET, etc. Option 1 transfers require no confirmation, and remove any Interim Funder or Warehouse/Gestation Lender interests from the loan.

- *Option 2*
  Used by most MERS Members. Option 2 transfers require confirmation from the new Investor. They do not remove Interim Funder or Warehouse/Gestation Lender interests from the loan.

The MERS® System will allow a MIN to co-exist in an Option 2 TOB batch and a Transfer of Servicing (TOS) batch only if the New Servicer and New Investor are the same entity.

The MERS® System will allow a MIN to co-exist in an Option 1 TOB batch and a Flow or Seasoned TOS batch.

EXHIBIT
3

Case 10-41685 Doc# 43 Filed 03/22/11 Page 16 of 22

# Transfer of Beneficial Rights to Member Investors

## Overview

Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS® System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee. As a MERS Member you have two options for registering a transfer of beneficial rights to another Member: Option 1 and Option 2. The determination of whether Option 1 or Option 2 is used is based on the Membership Profile of the purchasing investor.

### *Option 1*

An Option 1 transfer can be created in either flat file/EDI X12 mode or online.

In an Option 1 transfer, the Investor transfers beneficial rights on a system other than MERS (example: MORNET) and that system then initiates the MERS transaction.

Loans in an Option 1 batch that have not been registered are automatically reprocessed ("cycled") until the loans have been registered, up to ten (10) calendar days from the Transfer Date. Option 1 investors receive notification when MIN cycling begins through the *Transfer of Beneficial Rights Reject Report.*

If you include MINs that are not registered in your agency transmission (e.g. MORNET), you will receive an abbreviated version of the *Transfer of Beneficial Rights Reject Report* listing these unregistered MINs. It is your responsibility to register these MINs immediately, entering your MERS Org ID in the Investor field. If you register them after the 10 day cycling process is over, you must name the Agency in the Investor field.

An Option 1 Transfer of Beneficial Rights will replace any Option 2 investor on the loan. The investor that was removed during the Option 1 process is notified of its removal by the *Investor Removed by Option 1 TOB report*. Additionally, Interim Funder and Warehouse Gestation Lender interests are released automatically in an Option 1 beneficial rights transfer. No confirmations are required for Option 1 transfers.

If a MIN is included in an Option 1 and an Option 2 beneficial rights transfer batch at the same time, when the Option 1 beneficial rights transfer is completed, the duplicate MIN is deleted from the Option 2 beneficial rights transfer. The MINs that were deleted from the Option 2 beneficial rights transfer appear on the *MINs Deleted from Transfer of Beneficial Rights Report*. Non-duplicate MINs remain in the Option 2 transfer batch.

MINs can exist simultaneously in an Option 1 beneficial rights transfer batch and a transfer of servicing batch. See Transfer of Servicing Rights for details.

Important dates for beneficial rights transfer (Option 1) are:

- **Transfer creation date**: the date the Investor creates the beneficial rights transfer on MERS
- **Transfer Date**: the date the beneficial rights are transferred to the new Investor. May be the same as the Transfer Creation Date or the current processing date if the Transfer Creation Date is in the past.

The Transfer Date cannot be changed nor the transfer canceled on Option 1 beneficial rights transfers.

### *Option 2*

An Option 2 beneficial rights transfer is initiated on the MERS® System by the Servicer or Subservicer:

* The Servicer or Subservicer creates a pending beneficial rights transfer batch. Beneficial rights transfers can be created in flat file/EDI X12 mode and on MERS® OnLine.
* The new Investor and the current Investor confirm or reject the transfer.
    - If the new Investor is defined in its Member Information as "Passive Investor" its confirmation is automatic.
    - If the current Investor is defined in its Member Information as "Passive Investor" its confirmation is automatic.
    - The confirmation for the current Investor is also automatic if the initiator of the transaction and the current Investor have the same Org ID.

Case 10-41685 Doc# 43 Filed 03/22/11 Page 18 of 22

- If you reject the transfer using MERS® OnLine, you can provide a Reject Reason. Reject Reason definitions are specific to each investor.

* If the new Investor has indicated in its Member Information that Investor Loan Number, Pool Number, or Agency ID is required, then the new Investor must supply the data for each MIN when it confirms the MINs.
* On the Transfer Date, MERS will process all transfers confirmed by that date. MERS will process transfers as they are confirmed until the Expiration Date. Confirmation and reject activity for each processing cycle is reported on the *Physical Transfer of Beneficial Rights* report. This report is non-cumulative.
* The Interim Funder removes its security interests in the loans. It is not necessary to have the Interim Funder interests removed for the beneficial rights transfer to be registered. Completed transfers with interim funding interests not released appear on the *Coexisting Security Interest Report.*
* The Warehouse Gestation Lender's interests are automatically removed when a Transfer of Servicing rights processes, or removed by the Servicer or Subservicer if servicing is not transferred.

If you create a transfer Batch that has missing MINs, or MINs that shouldn't be included, use the Modify Batch option in MERS® OnLine to correct it while the Batch is in pending or overdue status. This activity will produce a *Modify Batch –Transfer of Beneficial Rights Report*

While a transfer is pending, all parties named in the batch can view the pending transaction using the View List of Batches feature in MERS® OnLine, and make the following changes:

* The new Investor can confirm or reject MINs in the batch at any time prior to the Expiration Date.
* The new Investor can change transfer confirmations (for example, reject a previously confirmed loan) any time prior to the Transfer Date.
* The party initiating the batch can change the Transfer Date. This will remove any confirmations made before the date was changed, so all MINs will have to be confirmed again.
* The new Investor can change the investor loan and pool numbers to reflect its own information
* The initiating Member can add MINs to the batch any time prior to the completion date, but the new MINs will have to be confirmed by the new Investor before they will be transferred.
* The initiating Member can delete any MIN from the batch, as long as that MIN has not been confirmed by the new Investor.

* The initiating Member can cancel the entire batch any time prior to the completion of the batch on Option 2 transfers, as long as the new Investor has not confirmed the transfer.

Loans not completely confirmed or rejected by the Expiration Date (31 days from the Transfer Date or from the Creation Date if Transfer Date is prior) are noted on the *Expired Transfer Report*, and the transfer batch status changes from transfer overdue to transfer Pending Delete.

Important dates for beneficial rights transfer (Option 2) are:

- **Transfer creation date:** the date the Servicer or Subservicer creates the beneficial rights transfer on MERS
- **Transfer Date**: the date the beneficial rights are transferred to the new Investor. May be the same as the Transfer Date or within 30 days of that date.
- **Transfer Expiration date**: 31 days after the Transfer Date MINs not confirmed or rejected by the expiration date will revert back to their original Investor.

If the Transfer Date is before the Transfer creation date, the Transfer deletion date will be 31 days after the Transfer creation date.

## Impact

The Transfer of Beneficial Rights process affects the following types of organizations:

* Servicers
* Subservicers
* Investors
* Interim funding lenders
* Document custodians
* Associated Members

## Business Procedure—Option 1

For Option 1, the loan must be registered on MERS. The MERS Member selling beneficial rights delivers loans to the investor as it did before MERS (for example, by MIDANET/MORNET), but must include the MIN in the MIDANET/MORNET transmission. The investor then transfers beneficial rights for the loans it has agreed to purchase and updates MERS.

This option is used when the seller registers the loan on MERS, listing itself as the Investor, and then sells the loan to an Option 1 Investor. The seller must include the MIN on the transmission to the Option 1 investor (on MIDANET, for example). The Investor then initiates the transfer of beneficial rights from its own system and the process below begins.

1. The new Investor creates a batch transaction that transfers beneficial rights to itself on the MERS® System.
2. When the Transfer Date is reached, the MIN is transferred.
3. If the MIN has not been registered by the Transfer Date, the batch continues to cycle for up to ten days.

Loans that are rejected from the batch transaction should be updated by the Investor in MERS® OnLine using the Option 1 transfer of beneficial rights.

MINs rejected due to non-registration are automatically reprocessed up to 10 calendar days from the Transfer Date. Option 1 investors are notified when the reprocessing cycle begins through the *Transfer of Beneficial Rights Reject Report*.

4. Loans not registered within the ten day window may be registered with the new Investor's Org ID in the Investor field, or after registration the new Investor can update the loan in MERS® OnLine using the Option 1 Transfer of Beneficial Rights.
5. Registered loans that are rejected from the batch transaction can be updated by the new Investor in MERS® OnLine using the Option 1 Transfer of Beneficial Rights.
6. The transfer of beneficial rights appears on the MIN-level milestones, audit history, and transfer audit history.
7. If the New Investor participates in MERS® InvestorID:
   - A Mortgage Loan Transfer Notice is generated using the Transfer Effective Date entered when the TOB transaction was initiated as the Transfer Date
   - The TOB milestone reflects that a Mortgage Loan Transfer Notice was generated
   - The Servicer and New Investor receive a *Mortgage Loan Transfer Notices Report*
   - The Mortgage Loan Transfer Notice fee is charged to the New Investor
8. The Originator or Servicer, old Investor, new Investor, and Custodian of the transfer of beneficial rights receive a *Physical Transfer of Beneficial Rights Report*.

**Note:** This process is also used by some investors to reflect each additional principal advance against a Home Equity Conversion Mortgage (HECM). The system generates the usual milestone, audit history, transfer audit history, and report entries for each

advance reported as an option 1 TOB, but the same option 1 investor appears as both previous and new investor.

## Business Procedure—Option 2

The seller must initiate all Transfer of Beneficial Rights transactions within 14 calendar days of the effective transfer date.

The Transfer Date can be a past date, up to 60 calendar days less than the transaction origination date, or up to 180 days in the future.

The seller uses this option when selling to an Option 2 Investor. The seller registers the transfer of beneficial rights on the MERS® System, and the Investor can choose whether to confirm or reject the transfer.

1. The current Servicer or Subservicer creates a pending beneficial rights transfer batch on the MERS® System, including the following information:
   * Transfer Date (must be New Investor's Acquisition Date if they use MERS® InvestorID to generate Notices)
   * Current Investor
   * New Investor
   * New Custodian (if applicable)
   * MINs
2. The MERS® System validates the information.
3. The transferring Member receives a *Pending Transfer of Beneficial Rights Report.*

   The transferring member may:
   - Cancel the Option 2 Transfer of Beneficial Rights anytime before it is confirmed by the new Investor.
   - Use the Modify Batch option on MERS® OnLine to add MINs to or delete MINs from the batch while it is in pending or overdue status. This activity will produce a *Modified Batch –Transfer of Beneficial Rights Report.*

The MERS® System checks daily to determine if the Transfer Date has been reached.

If the new Investor does not confirm the transfer by the transfer date, the MERS® System reflects an overdue transfer status for the loan(s).

4. The current and new Investors confirm or reject the transfer at the batch, pool, or loan level.
   - If the Investor is a Passive Investor or is the initiator of the transaction, the confirmation is automatic.
   - If the new Investor has indicated that Investor Loan Number, Pool Number, Agency ID, or any combination of the three is required, then the new Investor must supply the data fields for each MIN.
5. The MERS® System updates the Investor information on the Transfer Date or on the date that the Investor confirms the transfer, whichever is later.
6. The transfer of beneficial rights appears on the MIN-level milestones, audit history, and transfer audit history.